IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DEANDRE YOUNG, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. 3:23-cv-00494-DWD |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| RESPONDENT. | ) |

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

In this proceeding, Petitioner Deandre Young ("Young") requests that the Court vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. (Doc. 1). The Government opposes that request. (Doc. 5). For the reasons explained below, Petitioner's request is **DENIED**.

On April 6, 2021, Young was indicted in this District in *United States v Deandre Young*, case number 3:21-cr-30043-DWD, for aiding and abetting his co-defendant, Lamondra Beckley ("Beckley"), who knowing and intentionally possessed with the intent to distribute a mixture containing methamphetamine. (Count I). In Count III, Young was charged with possession of firearm in furtherance of a drug trafficking crime. (R. 42). On October 7, 2021, Young entered an open plea of guilty to Counts I and III of the indictment. (R. 83). Young's Presentence Investigation Report ("PSR") calculated his guideline sentence on Count I as 70-87 months and 60 months as a mandatory minimum

on Count III to run consecutive to Count I. At sentencing, this Court varied downward to 36 months on Count I and imposed the mandatory minimum of 60 months for Count III, for a total of 96 months. Judgment was entered accordingly. Young did not appeal.

Young now raises multiple grounds in support of his Habeas motion. First, he claims that his attorney was ineffective when he failed to investigate and utilize mitigating evidence to "show that movant was working his job at Door Dash delivering food and groceries when he was contacted by his friend who happened to be a confidential informant." (Doc. 1, pg. 4). Young claims such information would provide a basis for challenging the nexus between the gun and the drugs. (Doc. 1, pg. 4). Second, Young claims that he was prejudiced when his attorney failed to "correct errors in [the] pre-sentence report" that suggested co-defendant Beckley was Young's partner. (Doc. 1, pg. 5). Third, Young argues that he entered into an open plea unaware of the effect of pleading to the gun charge would have on his "ability to earn FSA good time credit." (Doc 1, pg. 7). And fourth, he asserts that he came to believe that his only choice was to plead guilty because his attorney told him that he would not get a "jury of his peers if he went to trial." (Doc. 1, pg. 8).

## I.   Background

On March 11, 2021, a confidential source (CS) participated in monitored phone calls with Young to arrange a four-ounce methamphetamine purchase in Fairview Heights, Illinois. The CS agreed to pay Young $2,100. Young agreed to meet the CS after Young picked up the methamphetamine from "his guy," the supplier. (R. 115, pg. 4).

Young arrived at the agreed-upon meet location then proceeded to a nearby gas station where agents approached Young's vehicle occupied by Young, his wife and Beckley, a passenger. All vehicle occupants were searched, and agents located a handgun in Young's pant pocket, as well as 1.724 grams of actual methamphetamine. Beckley was found in possession of a handgun and two bags containing approximately 110 grams of actual methamphetamine. *Id.*

In a post-arrest interview, Beckley admitted to possessing ice, which he intended to sell based upon a "deal" that Young, who Beckley described as his "partner", arranged with the confidential source. Young declined to make a post-arrest statement. (R. 115, pg. 4-5).

Young made an open guilty plea to Counts I and III of the indictment. At the plea hearing, the Court confirmed that Young was familiar with the charges he faced and explained to him the essential elements to be proven by the government at trial. (Doc. 5-1, pg. 7). More specifically, the Court outlined the three elements of Count III, possession of firearm in furtherance of a drug trafficking crime, including that one of the government's burdens was to prove beyond a reasonable doubt that he possessed a firearm in furtherance of a drug trafficking crime. (Doc. 5-1, pg. 7).

During the plea hearing, Young confirmed that he signed and agreed to the Stipulation of Facts. That Stipulation of Facts provides in part that "[a]s charged in Count 3 of the indictment, on or about March 11, 2021, Defendant Young knowingly and intentionally possessed a firearm […] in furtherance of a drug trafficking crime." (Doc. 5-

2, pg. 1). He confirmed that the statements in the Stipulation of Facts are "substantially true." (Doc. 5-1, pg. 12).

At the sentencing hearing, the Court conducted an inquiry regarding Young's review of the PSR. Young confirmed that he did have the opportunity to review the PSR with his attorney and that he had no objections to it. Further, Young confirmed that "everything in the presentence investigation report that we've been discussing is true and accurate." (Doc. 5-7, pg. 4-5). As noted, the Court sentenced Young to a below-guideline sentence of 36 months on Count I and the mandatory minimum of 60 months on Count III. Young did not appeal.

## II.   Discussion

Young now claims that his attorney was ineffective when he (1) failed to investigate surveillance tapes and Beckley's statements in an effort to challenge the existence of a "nexus" between the drugs and the gun; (2) failed to correct errors in the presentence investigation report in that it mischaracterized Young as a "known meth dealer;" (3) failed to advise him of the consequences of a conviction under 18 U.S.C. § 924(c)(1)(A) as it pertains to his inability to secure First Step Act credits; and (4) advised Young that he would not get a jury of his peers in the Southern District of Illinois.

Under § 2255(a), the Court will grant the "extraordinary remedy" of vacating, setting aside, or correcting Petitioner's sentence only if he shows it "was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum

authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). Notably, a hearing on such matters is not necessary when "the files and records of the case conclusively show that the prisoner is entitled to no relief." *United States v. Taylor*, 605 F.Supp.3d 1079, 1081 (N.D. Ill. Jun. 1, 2022). The undersigned, as the District Judge who presided over Petitioner's underlying criminal case, "is uniquely suited to determine if a hearing is necessary." *See Taylor*, 605 F. Supp. 3d at 1081 (quoting *Rodriguez v. United States*, 286 F.3d 972, 987 (7th Cir. 2002)), as amended on denial of reh'g and reh'g en banc (7th Cir. 2002) (cleaned up).

As a substantive matter, the Sixth Amendment to the United States Constitution grants criminal defendants the right to the effective assistance of counsel. *Wyatt v. United States*, 574 F.3d 455, 457 (7th Cir. 2009) (citing *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009)). Under *Strickland*, the petitioner must prove: (1) that his attorney's performance fell below an objective standard of reasonableness; and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *McDowell v. Kingston*, 497 F.3d 757, 761 (7th Cir. 2007). "Both components of the test must be satisfied; 'the lack of either is fatal.'" *Clay v. United States*, 311 F.Supp.3d 911, 918 (N.D. Ill. Apr. 19, 2018) (quoting *Edmonds v. Peters*, 93 F.3d 1307, 1313 (7th Cir. 1996)).

During this inquiry, it is presumed that a petitioner's counsel was "reasonably proficient." *Galbraith v. United States*, 313 F.3d 1001, 1008 (7th Cir. 2002); *see also Wyatt v*

*United States*, 574 F.3d 455, 458 (7th Cir. 2009) ("[A] movant must overcome the 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'"); *Clay*, 311 F.Supp.3d at 919 ("The central question in this analysis is not whether counsel's conduct deviated from best practices or most common custom, but instead, whether an attorney's representation amounted to incompetence under prevailing professional norms.") (cleaned up). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 446 U.S. 668, 686 (1984). Put another way, in order to establish counsel's performance was deficient, the defendant must show errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Hartjes v. Endicott*, 456 F.3d 786, 790 (7th Cir. 2006). "Counsel's representation need not be perfect, indeed not even good, to be constitutionally adequate." *Anderson v. United States*, 94 F.4th 564, 581 (7th Cir. 2024). Moreover, on the question of prejudice, Petitioner must prove there was a reasonable probability that, absent counsel's objectively unreasonable or deficient performance, he would have insisted on proceeding to trial rather than plead guilty. *See Wyatt*, 574 F.3d at 458 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)); *Galbraith*, 313 F.3d at 1008 (citing *Tezak v. United States*, 256 F.3d 702, 712 (7th Cir. 2001); *United States v. Jordan*, 870 F.2d 1310, 1318 (7th Cir. 1989)); *Rastafari v. Anderson*, 278 F.3d 673, 688 (7th Cir. 2002).

### A. *Counsel's failure to investigate surveillance tapes and Beckley's statement to law enforcement to challenge any "nexus" between the drugs and the gun.*

Young claims that his counsel was ineffective because he did not investigate "mitigating evidence to challenge the nexus of the gun found on petitioner to the drugs." (Doc. 1, pg. 13). More specifically, he asserts that "surveillance tapes" would show Petitioner working his job at Door Dash delivering food and groceries when he was contacted by the confidential source. (Doc. 1, pg. 13). He goes on to claim that he was carrying a firearm while working for Door Dash and before he was contacted by the confidential source, which proves that he carried the firearm for protection while working in dangerous areas. (Doc. 1, pg. 13). [1] Young concludes that he was "prejudiced by counsel's failure to bring this mitigation evidence to light." (Doc. 1, pg. 14).

The statute under which Young was charged in Count III, 18 U.S.C. § 924, only requires that the firearm be used or carried during and "in furtherance of" a drug trafficking crime. It provides in part:

> . . . any person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime--
>
> (i) be sentenced to a term of imprisonment of not less than 5 years;

18 U.S.C. § 924(c)(1)(A).

---

[1] Young attaches to his Reply (Doc. 7) numerous documents evidencing his position as an independent contractor with Door Dash in 2021, as well maps apparently purporting to show his deliveries on March 11, 2021 and various publications containing references to violence against persons involved in home deliveries. He also attaches information regarding crime rates in Glasgow Village, Missouri. (Doc. 7, pg. 16-52). The Court assumes that a person engaged in home deliveries in high-crime areas may legitimately desire to carry a firearm for protection.

But as the government observes, Young does not identify the source of any particular surveillance video or that he ever shared with his counsel the existence of any such video. (Doc. 5, pgs. 9-10). He only suggests that there are surveillance videos that confirm he carried a firearm for personal protection while working for Door Dash. Even if there are videos that show Young carrying a firearm while working his Door Dash job, such evidence would not exclude the "in furtherance" possession of the same firearm in when he engaged in his drug trafficking activities later on the day of his arrest. Firearms can be possessed for more than one purpose. And they may be carried for both legitimate and illegitimate reasons and done so at the same time. Possessing a firearm for legitimate reasons does not necessarily exclude the possession of the firearm for other reasons that are not legitimate. So, it is of no help to Young's argument that he carried the firearm in question for self-protection during his work for Door Dash when the record demonstrates that he later possessed it for the illegitimate purpose of furthering his drug trafficking. So, any failure to secure surveillance videos of Young carrying his firearm while working would be of no consequence in the face of the evidence that he carried the same firearm later that day in furtherance of a drug trafficking crime.

The Government also points out that Young does not allege that he even told Attorney Margulis to investigate the existence of surveillance tapes. (Doc. 5, pg. 9). [2]"[W]hen determining the reasonableness of trial counsel's investigation," we "consider

---

[2] Although Young apparently did not allege in his Petition that he told Attorney Margulis to investigate the existence of surveillance videos, he argues in his Reply that he did so. (Doc. 7, pg. 3)

what [the defendant] told trial counsel." *Koons v. United States*, 639 F.3d 348, 354 (7th Cir. 2011). Certainly, "an attorney need not investigate every possible factual scenario. Instead, the Constitution requires an attorney to make a 'reasonable' investigation." *Long v. United States*, 847 F.3d 916, 922 (7th Cir. 2017) (citing *Strickland*, 466 U.S. at 691). But here, even if it is assumed that Young told Attorney Margulis about the a surveillance tapes that would, as Young argues, demonstrate he carried a firearm while working, it would not be unreasonable to forego an investigation to locate such a video given that it would not necessarily contradict the evidence in the record that he also carried that firearm in furtherance of a drug trafficking crime.

There is nothing in the record to suggest that Attorney Margulis failed in his representation of Young to function as "counsel" as guaranteed by the Sixth Amendment or that he undermined the proper functioning of the adversarial process. More to the point, it is not unreasonable for Attorney Margulis to forego an expansive search for "surveillance videos" among presumably many homes and places of business Young had visited while working for Door Dash. Even if he did secure surveillance videos of Young carrying a firearm while carrying out his employment duties, it would not unsettle the fact that he was also carrying it during, and, as Young admitted, in furtherance of a drug trafficking crime. It cannot be said that under such circumstances Young was prejudiced by his attorney's representation of him.

***B. The Failure of Attorney Margulis to advise Young regarding nexus between drug trafficking and the Gun.***

Next, Young contends "Counsel failed to advise petitioner of the requirement of a nexus between the gun and drug" and that had he "known there needed to be a provable nexus, he would not have [pled] guilty to the gun charge and taken that element to trial." (Doc. 1, pg. 14). In his Reply, Young argues "[i]t was only later, when Petitioner entered the custody of the Bureau of Prisons, that Petitioner learned of the elements needed to convict on the 924(c) charge and begin (sic) to question his counsel's effectiveness." (Doc. 7, pg. 3) In order to demonstrate ineffective assistance of counsel that led to the entering of a guilty plea, Young "must establish through objective evidence a reasonable probability that" but for Counsel's failure to properly advise him he would not have pleaded guilty and would have insisted on a trial. *McCleese v. United States*, 75 F.3d 1174, 1179 (7th Cir. 1996). This argument fails for at least two reasons.

First, the government argues that Young offers up no objective evidence. He does not point to specifically what he learned after the plea and sentencing that causes him now to question his decision to plead guilty. The Court agrees. His bare-thread allegation that he would have decided otherwise had he known about the requirement of a "nexus" is simply self-serving and does not constitute the objective evidence necessary to support his claim.

Second, apart from the lack of objective evidence in his favor is the abundance of evidence of record that demonstrates he was aware of the "in furtherance element" contained in Count III. During the plea hearing, Young was read the essential elements of § 924(c) that must be proven by the government. (Doc. 5-1, pg. 7). He was informed by

the Court at that hearing that the government must prove beyond a reasonable doubt the that the firearm was possessed in *furtherance* of the drug trafficking crime. Young confirmed during the colloquy that he was aware of this element of Count III. (Doc. 5-1, pg. 7).

> THE COURT: Count 3, which is for the Possession of a Firearm in Furtherance of Drug Trafficking Crim, also has three elements. The first one is that you committed the crime of violence or drug trafficking crime prosecutable in Federal Court; and, two, that you knowingly possessed a firearm; and three, that the possession of the firearm was in furtherance of the Defendant's –that's you—drug trafficking crime. Were you aware of those elements?
>
> Deft. Young: Yes, sir.

(Doc. 5-1, pg. 7).

Young also provided to the Court an executed stipulation of facts that confirmed he possessed the firearm in *furtherance* of the drug trafficking crime. (Doc. 5-2, pgs. 1-2). Finally, and before accepting his change of plea, the Court confirmed with Young that he understood everything discussed during the change of plea hearing. Further, the Court gave Young the opportunity to speak again with his attorney with any questions before entering a plea of guilty. (Doc. 5-1, pg. 12). He declined the opportunity.

If he did not understand the meaning of the phrase "in furtherance of he made no mention of it during the change of plea hearing despite there being opportunities to question its meaning. *See United States v. Castillo*, 406 F.3d 806, 814 (7th Cir. 2005) ("[T]he natural meaning of 'in furtherance of' is 'furthering, advancing or helping forward.'"). As the government observes, the Court was entitled to rely on the truth of Young's statements that he was aware of the elements under Count III and that he understood

everything discussed at the Rule 11 hearing. He cannot not now claim successfully that he would have declined to plea guilty to Count III had he been made aware of the requirement of proof of "nexus" or "in furtherance of" a drug trafficking crime.[3]

Young also alleges that Attorney Margulis informed him that "merely because petitioner had the gun at the scene of the crime the prosecutor did not need to make a connection between the gun and drugs." (Doc. 1, pg. 6). This advice, Young suggests, made Attorney Margulis' representation of him ineffective. Young seemingly ignores the indictment which alleges that possession of the firearm was "in furtherance of" a drug trafficking crime. He disregards the Stipulation of Facts which he signed before changing his plea and which the Court reviewed with him at the plea hearing, and which indicates that he had possession of the firearm "in furtherance of" a drug trafficking crime. Apart from the clear wording of the Indictment and Stipulation of Facts, there is the information contained in discovery illuminating the circumstances of Young's possession of the firearm and drugs. It is apparent that Attorney Margulis, during the course of discovery, was made aware of law enforcement's report of Young's arrest which indicates that the

---

[3] Because it appears that Young may be conflating the word "nexus" with the statutory phrase "in furtherance of," it is appropriate to reiterate that "in furtherance of" by its natural meaning, requires a showing that the firearm was used to advance or move forward his drug trafficking. A "nexus" means only a link or connection. See Merriam-Webster.com/dictionary/nexus (last visited Jan. 23, 2026) Case law often uses the term "nexus" to describe "in furtherance of." *See United States v. Duran*, 407 F.3d 828, 840 (7th Cir. 2005). That use of the word "nexus" does not create a heightened standard of relationship between the firearm and the drug trafficking beyond the statutory language. Accordingly, any failure on the part of Attorney Margulis to employ the term "nexus" instead of the phrase "in furtherance of" in his conversations with Young is not consequential. *See United States v. Lomax*, 293 F.3d 701, 706 (4th Cir. 2002) ("In fact, carrying a firearm during a drug trafficking crime like [defendant] did will always seem to constitute possession in furtherance because carrying a firearm always serves to protect the holder.") (internal quotations omitted).

gun and the methamphetamine were found in the same pocket. (Doc. 5-8, pgs. 3-4). Discovery also disclosed the contents of co-defendant Beckley's post-arrest interview, which reported that when Beckley showed the drugs to Young, Beckley and Young confirmed with one another that each was "strapped." (Doc. 5-9). With such evidence, a jury could quite easily find that Young carried his firearm "in furtherance of" a drug trafficking crime.

The contemplation and weighing of the potential success of arguments that may be placed before the jury for its consideration is not only proper but is the duty of any attorney representing a person charged with crimes like those involved here. In the record before the Court, there is no indication that Attorney Margulis' advice to Young to plead guilty was objectively unreasonable. As such, under these circumstances there is no room for a meaningful argument that advice to plead guilty amounted to ineffective assistance of counsel.

### C. The alleged failure of Attorney Margulis to correct errors in the presentence investigation report in that it mischaracterized Young as a Beckley's "partner" and Young was a "known meth dealer."

Young next contends that Attorney Margulis failed to correct errors in the PSR which resulted in the "mischaracterization of petitioner that prejudiced petitioner in the eyes of the court." (Doc. 1, pg. 14). More specifically, he argues that he was prejudiced by the PSR's reference to Young as co-defendant Beckley's "partner" and as a "known distributor of methamphetamine in Southern Illinois." Young argues that there is no evidence that he was co-defendant Beckley's partner or that he engaged in drug

trafficking beyond the episode that is charged in Count I. He posits that he is a father to two children and worked hard to provide for and raise them in difficult circumstances; that the only reason he was in Southern Illinois is that he was asked to by Beckley; and his involvement was limited to "putting the two parties together." (Doc. 1, pg. 14-15).

The PSR was disclosed on January 5, 2022, and on January 18, 2022, Young filed an Acceptance of Presentence Investigation Report which indicates that he "accepts and has not objections to the Presentence Investigation Report." (Doc. 5-3). At the sentencing, Young was placed under oath. The Court, notwithstanding the Young's Acceptance, then inquired of Young to ensure that he had adequate opportunity to review the PSR with Attorney Margulis for truth and accuracy. (Doc. 5-7, pgs. 4-5). He confirmed that he had. (Doc. 5-7, pgs. 4-5). Thus, his claim that the PSR was inaccurate or untruthful fails because he has already confirmed under oath that he had no objection to its content.

The government goes on to point out that Young clearly was not prejudiced because his attorney raised during the sentencing the same positive attributes that Young now asserts in his Petition. The government points to the letters of support and the "mountains of mitigating evidence" that Attorney Margulis put forth at sentencing that resulted in the Court varying downward from a guideline sentence of 130-147 months to 96 months of imprisonment. The government then concludes that the Court's downward variance cannot support the idea that he had been "prejudiced in the eyes of the Court." The Court agrees and finds no evidence that it was "prejudiced" by reason of Beckley's statements. In fact, the Court did not address during sentencing the statements that

Young now claims caused it to be prejudiced toward him. There is no evidence that the Court was influenced at all by the PSR's reference to Young as a "partner" of Beckley or that Young was a distributor of methamphetamine in Southern Illinois. The PSR's reference to "partner" is a description by Beckley of his relationship with Young, and that was simply reported in the PSR. (R. 115, ¶ 16). Likewise, it was the confidential source that provided the information about Young being a distributor of methamphetamine in Southern Illinois. (R. 115, ¶ 13). Young has not, and, under the circumstance of this matter, cannot present any objective evidence that Attorney Margulis was ineffective as counsel for failing to correct his PSR or that he was prejudiced by the inclusion of either statement in the PSR.

### *D. Attorney Margulis' suggestion to Young that he would not get a jury of his peers.*

Young claims that Attorney Margulis' representation was ineffective because he advised Young that "he would not get a jury of his peers" in the jurisdiction of the Court. (Doc. 1, pg. 8). Young does not describe how this advice amounts to his being deprived of effective representation. But a defendant is not entitled to have a jury of his peers decide his case. Rather, all that such a defendant is entitled to is a panel of impartial and indifferent jurors. *United States v. Raszkiewicz*, 169 F.3d 459, 462 (7th Cir. 1999). In fact, there is no requirement that a venire or jury mirror the demographics of the general population of the district. *See United States v. Phillips*, 239 F.3d 829, 842 (7th Cir. 2001). So, whether Young was motivated to plead guilty because of any such advice from Attorney Margulis is of no consequence as Young is not necessarily entitled to a jury of his peers.

### *E. Young's contention that he would not have entered a plea of guilty had he known that his 924(c) conviction would disqualify him for First Step "good time credits."*

Young asserts that had he known a 924(c) conviction would make him ineligible for good time credits under the First Step Act, he would not have entered a plea of guilty and instead taken the charge to trial. (Doc. 1, pg. 18). Under the first prong of *Strickland's* two prong test, the Court must analyze the evidence to determine whether counsel's representation "fell below an objective standard of reasonableness." *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010). "The first prong—constitutional deficiency—is necessarily linked to the practice and expectations of the legal community: 'The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Id*. Here, the Court will assume for the purposes of expediency that the weight of prevailing norms supports the view that counsel must advise his client regarding ineligibility for good time credits for those convicted under 924(c).

The second prong under *Strickland* requires a litigant to also demonstrate prejudice, that is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Buck v. Davis*, 580 U.S. 100, 119 (2017) (citing *Strickland*, 466 U.S. at 694). It is here that Young's argument fails.

Young's mere allegation that he would have decided to go to trial instead of pleading guilty to Count III had he known he would not be eligible for good time credits is self-serving. He does not allege that he told Margulis that a condition to his pleading guilty is that he would receive good time credits. Likewise, he does not make any

showing or point to anything in the record that he suffered prejudice by Attorney Margulis' representation of him or that the outcome would have been different had he known of his possible ineligibility for good time credits. Accordingly, Young's failure to make the required showing of sufficient prejudice defeats his ineffectiveness claim. *See Strickland*, 466 U.S. at 700.

### III. CONCLUSION

For the reasons explained above, the Court finds that Young is entitled to no relief on his Petition. (Doc. 1). Accordingly, Young's request to vacate, set aside, or correct his sentence under § 2255 is **DENIED** without a hearing. *See United States v. Taylor*, 605 F.Supp.3d at 1081. The case is **DISMISSED with prejudice**. The Clerk of the Court is **DIRECTED** to enter judgment accordingly.

Rule 11(a) of the Rules Governing § 2255 Cases in the U.S. District Courts requires the issuance or denial of a certificate of appealability when a final order is entered against an applicant. Such a certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner "must have a constitutional claim (or an underlying procedural argument on which a constitutional claim depends), and he must 'demonstrate that reasonable jurists would find the district court's assessment of his constitutional claims debatable or wrong.'" *United States v. Fleming*, 676 F.3d 621, 625 (7th Cir. 2012) (quoting *Tennard v. Dretke*, 542 U.S. 274, 281 (2004); citing *Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008)); *accord Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, the Court **FINDS** the

alleged grounds for relief lack merit, and reasonable jurists would not find that conclusion debatable or wrong. Since Petitioner has not made a "substantial showing of the denial of a constitutional right," the Court **DECLINES** to issue a certificate of appealability.

    **SO ORDERED.**

Dated: January 23, 2026              /s/ *David W. Dugan*

                                                          _____

                                                          DAVID W. DUGAN
                                                          United States District Judge